*808 OPINION.
Littleton :
The transaction here in question occurred in 1922 and is governed by the provisions of the Revenue Act of 1921, the parts of which pertinent here, are as follows:
Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
* ⅝ * * * * *
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise * * ⅜.
Sec. 201. (a) That the term “dividend” when used in this title (except in paragraph (10) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, except a distribution made by a personal service corporation out of earnings or profits accumulated since December 31, 1917, and prior to January 1, 1922.
Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property * * s.
It appears from the stipulation of facts that there was, in August, 1922, an amendment of petitioner’s charter, authorizing an increase in its capital stock from $150,000 to $250,000, and that in the following month petitioner declared a stock dividend of 10 per cent, increasing the capital stock outstanding from $150,000 to $165,000. Relative to this stock dividend there is no dispute.
It further appears that the petitioner authorized the sale of stock of the par value of $85,000, as yet unissued, at a price based on adjusted value of assets after transfer of assets to trustees, as set forth in the findings of fact.
On September 30, 1922, a resolution was adopted by petitioner’s board of directors authorizing and directing the transfer and delivery to two trustees, of certain assets of petitioner to be by them converted into cash and the proceeds distributed pro rata among the stockholders, according to. their holdings of stock, first deducting *809 necessary expenses and disbursements, as provided in the trust agreement.
The trust agreement was never executed according to its terms and conditions. Among other things, it provided:
It is contemplated that said fund will be administered at the banking house of the Savings Bank and that the Trustees and bank employees shall administer it. It is further contemplated that the said Trustees and such bank employees as they shall engage to administer the fund shall receive no compensation for their services, except their salaries from the said bank. The Trustees therefore agree that they shall not be entitled to any compensation whatever for their services performed in the administration of the said trust. All other expenses of the said trust fund, all income taxes which may hereafter become due and payable on income of the Savings Bank up to and including September 30th, 1922, and all unknown debts and liabilities of the Savings Bank existing September 30th, 1922, shall be paid when due out of the fund.
What were the “unknown debts and liabilities of the Savings Bank existing September 30,1922,” which were to be paid “ when due out of the fund ” to be realized from a conversion of the assets delivered to the said trustees is not in evidence before us.
There is no evidence that the directors of- the Savings Bank or its stockholders ever insisted on or desired the execution of the alleged trust agreement according to its terms. The two individuals named as trustees apparently did nothing towards execution of the trust prior to October 17, 1922.
On that date a resolution was passed by the directors of the Savings Bank authorizing and directing the trustees “to deliver as a dividend Nine Thousand (9000) shares of the Amalgamated Sugar Company common stock to the stockholders of the Ogden Savings Bank, as of record September 30, 1922, prorated on the basis of Sixteen Hundred Fifty (1650) shares. Such transfer and delivery to be made upon the premises and under the conditions set out in the trust agreement.”
Such transfer and delivery were made to the stockholders on November 11, 1922. No disposition whatever was made of 526 shares of the 9,526 shares originally authorized and directed in the so-called trust agreement to be converted into cash for distribution to stockholder^, after paying “ necessary expenses and disbursements ” and “ all unknown debts and liabilities of the Savings Bank existing September 30, 1922.”
Considering the so-called trust agreement in the light of the interpretation apparently put upon it by the directors of the Savings Bank and the trustees themselves, and what was actually' done, it appears to have been nothing more than an agency arrangement for such disposition of the 9,526 shares of stock as the directors of the Savings Bank might direct. What the directors subsequently ordered done, by resolution of October 17, 1922, is what *810 was actually done and it is that with which we are now concerned. See Anna M. Harkness, 1 B. T. A. 127.
At the time, September 30, 1922, the trust agreement was signed, the petitioner charged off on its surplus account an alleged loss of $72,304.34, entering the cost of the 9,526 shares of Amalgamated Sugar Co. stock at $108,501.14 and the market value at $36,196.80. The cost is stipulated to be as indicated and the market value on that date to have been as stated, but petitioner was not warranted in charging off as a loss the difference between the two amounts.
There wasjiot on September 30,1922, nor on October 17, 1922, nor on any other date indicated by the evidence, any resolution of the board of directors or any entry on the minutes or any record of any kind, declaring a dividend of so much of a percentage of the earnings or surplus of the company, or any dividend based on the capital stock or any dividend in dollars and cents.
There was no execution of the trust agreement as contemplated by its terms or as indicated by the resolution of the board of directors of September 30,1922.
What was done was by virtue of the resolution of October 17, 1922, and in accordance with its directions, which was a distribution in kind of 9,000 shares of Amalgamated Sugar Co. stock pro rata among petitioner’s stockholders. It is true, such distribution was termed a “ dividend,” not a “ stock dividend ” in the sense that such phrase is generally used, but a dividend in property or a distribution in kind.
The question to be decided, therefore, is whether a corporation sustains a loss upon the payment of a dividend in property which cost it more than its market value at the time of distribution to the stockholders.
The instant case is not like the case of Callanan Road Improvement Co., 12 B. T. A. 1109, where a specific sum of money was declared as a dividend and paid to the stockholders in part by delivery to them of Liberty bonds which cost the company the same amount as the dividend declared, but at the time of delivery to stockholders had a fair market value of less than the dividend declared, the difference between the market value of the bonds and the amount of the dividend declared being paid by the company in cash.
In that case we held that the company sustained a deductible loss in the amount of said difference. ■ The situation here is different. The value of the 9,000 shares of stock when the same were directed to be distributed as a dividend is not shown. The shares were not sold nor disposed of by exchange for other property.
If the petitioner, instead of directing the trustees “to deliver as a dividend 9,000 shares of Amalgamated Sugar Company common *811 stock to the stockholders,” as was done by reason of the resolution of October 17, 1922, had declared a dividend of $102,510 (assuming earnings and surplus sufficient), and had paid the same by delivering to its stockholders the 9,000 shares of stock which cost $102,510, but worth on the market only $34,110, and the difference, $68,400, in cash, it would have sustained a loss in the amount of the difference. If, however, the stockholders had seen proper to accept as payment in full, the depreciated stock at the original cost price, $102,510, the same amount as the dividend declared, no loss would have been sustained by petitioner.
The petitioner, by resolution of its board of directors, of October 17, 1922, only incurred an obligation to distribute the 9,000 shares of Amalgamated Sugar Co. stock to its stockholders, which obligation it fully discharged without loss to it, by making the distribution of the stock as directed.
The facts in this case are somewhat analogous to those in Hollenberg Music Co., 6 B. T. A. 421, 425, wherein we said — referring to a dividend declai’ed by the petitioner:
* * * If, as the resolution of February 6, 1917, indicates, the petitioner merely distributed the property interest along with other dividends, we are unable to see that loss, contingent or otherwise, resulted from the distribution. * * *
In our opinion, the transaction here under consideration is not such “ sale or other disposition of property ” as contemplated by the statute, section 202 (a) of the Revenue Act of 1921, whereby there may be a “ gain derived or loss sustained.”
There was merely a distribution in kind to stockholders, by a going corporation, of property or gains and surplus accumulated since February 28, 1913, and, therefore, no loss was sustained. The Commissioner committed no error in refusing to allow the deduction.
Reviewed by the Board.

Judgment will be entered for the respondent.